**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**


FLEXSTEEL PIPELINE
TECHNOLOGIES, INC.,

       Plaintiff,

v.

BIN CHEN and CHANGCHUN
GAOXIANG SPECIAL PIPE CO., LTD.,
a/k/a GOLSUN PIPES,

       Defendants.

_____/

Civil Action No.
5:16-cv-00239-MCR-GRJ


## DEFENDANT CHANGCHUN GAOXIANG SPECIAL PIPE CO., LTD.'S MOTION TO SET ASIDE CLERK'S ENTRY OF DEFAULT

Pursuant to Federal Rule of Civil Procedure 55(c), defendant Changchun Gaoxiang Special Pipe Co., Ltd. ("Golsun") hereby moves to set aside the default entered by the clerk of court (the "Clerk") on August 10, 2017 (D.E. 36 (the "Clerk's Default")) upon the motion for entry of default (D.E. 35 ("Default Motion")) filed August 9, 2017 by plaintiff Flexsteel Pipe Technologies, Inc. ("Plaintiff").

## I.  INTRODUCTION

This motion presents a simple question: whether to set aside the Clerk's Default entered against Golsun.  The question is not a close one.  The motion should be granted.

It is axiomatic that proper execution of service is a prerequisite to personal jurisdiction and the obligation of a defendant to appear before a court of law.  The Clerk's Default was entered in this case three weeks ago, on August 10, 2017, despite the fact that defendant Golsun had not been properly served.  To this date, Golsun has still not been properly served.

The evidence of service submitted by Plaintiff in support of the Default Motion is woefully inadequate.  Plaintiff's assertions to have served three individuals in the United States are fatally flawed, and service in China under the Hague Convention[1] has not been effected.

Other relevant factors reinforce the conclusion that the Clerk's Default entered in this case should be set aside.  Foremost is the strong preference for deciding cases on the merits.  In addition, Golsun's failure to appear is obviously not culpable in view of the insufficient service; Golsun has numerous meritorious defenses to Plaintiff's claims; Golsun would be exposed to great financial loss if Plaintiff were permitted effectively to proceed ex parte; and Golsun has brought this motion promptly after entry of default.  Plaintiff, meanwhile, has not claimed or shown that prejudice would result from setting aside default, because Plaintiff has no legitimate

---

[1] Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361 [hereinafter Hague Convention].

expectation of proceeding to judgment against a party who has not been validly served.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

Golsun is a Chinese company located in Jilin Province, China and dedicated to research, development and manufacturing of flexible pipe technology for the petroleum, chemical and other industries. *See* About, *Company Profile*, Golsun Pipes, http://www.golsunpipe.com/about/?123.html (last visited Aug. 29, 2017). Golsun holds numerous patents on its technologies. *See, e.g.*, About, *Patents*, Golsun Pipes, http://www.golsunpipe.com/list/?153_1.html (last visited Aug. 29, 2017). Among those patents are U.S. Patent No. 9,067,397 (the "'397 Patent"), and Chinese Patent No. 100432513C (the "Chinese Patent"). According to the operative complaint in this case (D.E. 16 (the "Amended Complaint")), Plaintiff is a competitor of Golsun and has its principal place of business in Houston, Texas (*id.* ¶ 1.)

On August 19, 2016, Plaintiff filed the original complaint in this case. (D.E. 1.) On August 23, 2016, the Clerk issued two separate civil summonses: one to defendant Bin Chen ("Chen") (D.E. 4), and one to defendant Golsun (D.E. 4-1). Plaintiff represents that on September 23, 2016, it requested service on Golsun under the Hague Convention. (D.E. 35-1.) Chen filed a motion to dismiss on October 26, 2016 (D.E. 14), which was mooted (*see* D.E. 24) by Plaintiff's filing of the Amended Complaint on November 9, 2016.

The Amended Complaint alleges that Chen worked for Plaintiff's predecessor from 1990 to 2005 (Am. Compl. ¶ 13), in the course of which he allegedly agreed to maintain that company's trade secrets and assign any inventions (*id.* ¶¶ 15-16), and was allegedly exposed to pipe designs and technologies underlying the '397 Patent and the Chinese Patent (Am. Compl. ¶¶ 12-14, 25-26). Chen allegedly applied for the Chinese Patent on June 3, 2005 (*id.* ¶ 29), and for the '397 Patent in 2013 (*id.* ¶ 33). According to the Amended Complaint, both patents embody

technologies that "belong to FlexSteel." (*Id.* ¶¶ 29, 33.) Golsun, for its part, allegedly knew or should have known the foregoing, but used the technologies and cooperated with Chen to obtain the '397 Patent and the Chinese Patent.

The Amended Complaint contains seven counts: (1) correction of inventorship pursuant to 35 U.S.C. § 256; (2) conversion; (3) breach of contract; (4) tortious interference with contractual obligations; (5) misappropriation of trade secrets under federal law; (6) misappropriation of trade secrets under state law; and (7) civil theft under Fla. Stat. § 722.11. The remedies Plaintiff seeks include correcting inventorship of the '397 Patent, assigning ownership of the '397 Patent and the Chinese Patent to Plaintiff, compelling an accounting, awarding damages, exemplary damages, fees and costs, and issuing an injunction.

In an initial scheduling order, the Court set a discovery deadline of April 10, 2017 (D.E. 18), later extended to July 10, 2017 with dispositive motions due twenty-one days thereafter (D.E. 21).

On April 10, 2017, Plaintiff filed a "Notice of Service" stating:

> FlexSteel served Chen on August 29, 2016. A copy of the affidavit of service on Chen is attached hereto as Exhibit 1.
>
> FlexSteel submitted a Request for Service Abroad to China's Central Authority on September 23, 2016 to serve Golsun Pipes pursuant to the Hague Convention on the Service Abroad of Judicial and Extraterritorial Documents and Fed. R. Civ. P. 4(f)(1). FlexSteel understands that this service is still in progress.
>
> With the Hague Convention Service pending, FlexSteel also served Golsun Pipes on March 16, 2017 via James Pravel, Golsun Pipes' counsel-of-record at the United States Patent & Trademark Office regarding the '397 patent. A copy of the affidavit of service on Mr. Pravel is attached hereto as Exhibit 2.
>
> FlexSteel has also inquired whether counsel for Chen will accept service on behalf of Golsun Pipes as well. To date, they have been unable to do so.

> FlexSteel and Chen are engaged in ongoing discovery. FlexSteel is hopeful that Golsun Pipes will respond to the Complaint shortly and engage in timely discovery, and that no adjustment to the Court's Scheduling Order (D.I. 21) – including the July 10, 2017 deadline for discovery – becomes necessary.

(D.E. 23 at 1-2.)

On May 1, 2017, the Court ordered Chen to file a new responsive pleading in light of the Amended Complaint that mooted Chen's motion to dismiss. (D.E. 24.) Chen filed an answer on May 12, 2017. (D.E. 26.)

Also on May 12, 2017, Plaintiff and Chen jointly moved for a modification of the scheduling order in view of Plaintiff's ongoing failure to serve Golsun:

> 1) FlexSteel filed its Complaint against Chen and Golsun Pipe on August 19, 2016. (D.I. 1) Shortly thereafter, Chen accepted service of the Complaint, and FlexSteel sought service on Golsun Pipe in China through the Hague Convention on Service Abroad. When FlexSteel and Chen submitted their joint discovery plan and proposed scheduling order to the Court, they expected Golsun Pipe to be served in short order. The Court's Scheduling Order largely adopted FlexSteel and Chen's proposed schedule.
>
> . . . .
>
> 3) On multiple occasions, FlexSteel has followed-up with Chinese authorities regarding their effecting of service on Golsun Pipe pursuant to FlextSteel's request under the Hague Convention. On May 1, 2017, in response to FlexSteel's most recent inquiry, the Ministry of Justice of China stated that service has still not been effected. The plaintiff has taken all possible and necessary steps to accomplish service on Golsun Pipes under the Hague Convention.
>
> 4) In an effort to proceed efficiently and avoid the risk of duplicative discovery, the parties have to-date refrained from some forms of discovery (*e.g.*, depositions) prior to Golsun Pipe's appearance in the litigation.
>
> 5) The parties believe that the brief extension proposed below will encourage the timely resolution of this dispute by either: (a) allowing service on Golsen [sic] to be accomplished, or (b) allowing FlexSteel and Chen to complete sufficient discovery to resolve FlexSteel's claims against Chen in the event that service on Golsen [sic] cannot be

accomplished. The parties no longer plan to refrain from any discovery pending Golsun Pipes' appearance, and do not anticipate the need for any further modifications of the Court's Docket Control Order.

(D.E. 25 at 1-3.) The Court granted that joint motion, but in doing so, made no reference to Golsun or Plaintiff's failure to effect service on Golsun. (D.E. 27.)

On August 9, 2017, despite Plaintiff's repeated acknowledgments that it had failed to effect service on Golsun, Plaintiff filed a motion for entry of default against Golsun, claiming to have effected service on Golsun in numerous ways. (D.E. 35.) One day later, the Clerk entered the Clerk's Default. (D.E. 36.)

## III.    ARGUMENT

The Clerk's Default should be set aside because Golsun was never served with process, and because there is good cause under Rule 55(c).

### A.  The Clerk's Default Should Be Set Aside Because Golsun Was Never Served

It is Plaintiff's burden to establish the sufficiency of service of process. Fed. R. Civ. P. 4(l)(1) ("Unless service is waived, proof of service must be made to the court."); *Broodnox v. Wal-Mart Stores East, LP*, No. 3:15-cv-425/MCR/EMT, 2015 WL 8903537, at *5 (N.D. Fla. Nov. 20, 2015) ("Once the sufficiency of service is brought into question, the plaintiff has the burden of proving proper service of process.").

The requirements for proper service are set forth in Federal Rule of Civil Procedure 4. "A summons must . . . be directed to the defendant . . . ." Fed. R. Civ. P. 4(a). "A summons . . . must be issued for each defendant to be served." Fed. R. Civ. P. 4(b). "Unless service is waived, proof of service must be made to the court." Fed. R. Civ. P. 4(l)(1). Accordingly, the rudiments of proper service are that a separate civil summons must issue for each defendant, who in turn must be served with that summons, and the plaintiff must prove to the court that service was effected as to each defendant.

"Valid service of process is a prerequisite for a federal court to assert personal jurisdiction over a defendant." *Laster v. City of Albany, Ga., Water, Gas & Light Co.*, 517 Fed. App'x 777, 777 (11th Cir. 2013). Accordingly, service is a prerequisite to entry of default, and a failure properly to serve a defendant constitutes per se good cause to set aside the default. *See Robinson v. Hogansville Police Dept.*, 159 Fed. App'x 137, 138-39 (11th Cir. 2005) (holding that insufficient service negated personal jurisdiction, and therefore "appellees satisfied the 'good cause' requirement of Fed. R. Civ. P. 55(c)"); *Rowland v. Conyers*, No. 4:10-cv-64-RH-GRJ, 2012 WL 3024444, at *2 (N.D. Fla. July 23, 2012) ("[B]ecause service on Defendant Conyers was never made properly, the Court . . . directs that the Clerk's default be set aside."); *see also Rismed Oncology Sys., Inc. v. Baron*, 638 Fed. App'x 800, 805-06 (11th Cir. 2015) ("Typically, insufficient service of process on a party operates to prohibit a court from entering a default judgment against that party."); *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1299 (11th Cir. 2003) ("Generally, where service of process is insufficient, the court has no power to render judgment and the judgment is void.").

> Rule 4 . . . reflect[s] a policy that a defendant should receive notice of all claims for relief upon which a court may enter judgment against him. Formal personal service impresses upon a defendant that judicial process has been invoked to effect a coercive remedy against him. Whether the notice be that an action has commenced or that the moving party has added a new or additional claim for relief against a party in default for failure to appear, the need for notice is the same.

*Varnes v. Local 91, Glass Bottle Blowers Ass'n of U.S. & Canada*, 674 F.2d 1365, 1368 (11th Cir. 1982).

Plaintiff led the Clerk to believe that service had been effected on Golsun either by mere passage of time under the Hague Convention, or by service on each of three separate individuals whom Plaintiff claimed to have served as proper recipients for Golsun under Rule 4. None of those attempts at service was effectual, and none would justify refusing to set aside the Clerk's

Default.  Golsun has never been served.

### 1.    Passage of Time Under the Hague Convention Does Not Warrant Default

Rule 4(h) states the permissible methods of service on a "corporation, or a partnership or other unincorporated association."  Fed. R. Civ. P. 4(h).  Service outside the United States may be made as prescribed in Rule 4(f), which provides for service "by an internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents."  Fed. R. Civ. P. 4(f)(1), 4(h)(2).

Article 15 of the Hague Convention provides:

> Where a writ of summons or an equivalent document had to be transmitted abroad for the purpose of service, under the provisions of the present Convention, and the defendant has not appeared, judgment shall not be given until it is established that –
>
> a) the document was served by a method prescribed by the internal law of the State addressed for the service of documents in domestic actions upon persons who are within its territory, or
>
> b) the document was actually delivered to the defendant or to his residence by another method provided for by this Convention,
>
> and that in either of these cases the service or the delivery was effected in sufficient time to enable the defendant to defend.
>
> Each Contracting State shall be free to declare that the judge, notwithstanding the provisions of the first paragraph of this Article, may give judgment even if no certificate of service or delivery has been received, if all the following conditions are fulfilled –
>
> a) the document was transmitted by one of the methods provided for in this Convention,
>
> b) a period of time of not less than six months, considered adequate by the judge in the particular case, has elapsed since the date of the transmission of the document,
>
> c) no certificate of any kind has been received, even though every reasonable effort has been made to obtain it through the competent authorities of the State addressed.
>
> Notwithstanding the provisions of the preceding paragraphs the judge may order, in case of urgency, any provisional or protective measures.

Hague Convention, *supra* note 1, art. 15.

Thus, service must be made either by actual delivery or as prescribed by the law of the country where effected, and in sufficient time to enable the defendant to defend. The forum country is "free to declare that the judge . . . may give judgment," *id.*, even if no certificate of service has been received, provided that, inter alia, "a period of time of not less than six months, considered adequate by the judge in the particular case, has elapsed," *id.*

Plaintiff admits that it has not received a certificate of service, yet Plaintiff obtained the Clerk's Default on the premise that more than six months had passed. There are several fatal defects in that approach.

First, any decision to dispense with proof of service under article 15 must be made by a judge in the exercise of discretion. The six-month minimum is only a prerequisite to a decision that depends more broadly on whether "a period of time . . . considered adequate by the judge in the particular case, has elapsed." *Id.* Such a decision could be made only by a district judge upon motion, not by a court clerk. Plaintiff's shortcut of obtaining a clerk's default without judicial involvement is therefore illegitimate. The non-binding case cited by Plaintiff in the Default Motion, *Marschauser v. Travelers Indem. Co.*, 145 F.R.D. 605 (S.D. Fla. 1992), proves this point. The plaintiff in that case had "filed a Motion for Entry of Default," *id.* at 607, arguing that the "[c]ourt should issue an Order of Default," *id.* at 610. The court – not the clerk – issued the decision holding that "[t]he Court's entry of an Order of Default is within the discretion of the Court," *id.*, and "exercise[d] its discretion and refuse[d] to enter an order of default at this juncture," *id.*

Second, even if Plaintiff followed proper motion procedure (which it did not), any such motion ought to be denied anyway. Plaintiff has undertaken service in China, and should have

8

known that the process is slow.  *See, e.g.*, Aaron Lukken, *How to Serve Process in China*, Hague Law Blog (Jan. 12, 2017) ("It may take a while – likely 9 months from submission to return of proof, if not more.  The folks in Beijing get the job done; it just takes a while.").  As recently as May 2, 2017, Plaintiff was told by a representative of the Ministry of Justice of China that "[t]he case is still in the court" (D.E. 35-2), and "[o]nce they feed back, we will inform you" (*id.*).  Plaintiff has no reasonable expectation that its case be handled with any greater expediency than the untold number of cases of other plaintiffs who have submitted complicated legal documents for service in China.  Plaintiff's predicament is entirely of its own making.  It should have known that service on Golsun would be difficult and timed its service on Chen accordingly.  Instead, it rushed ahead with the case against Chen and now wants to trivialize the importance of formal service upon Golsun.  Even if Plaintiff had properly moved this Court pursuant to article 15 to forego proof of service, the better course would be for the Court to exercise its discretion to deny that motion because "adequate" time has not elapsed in this "particular case."  Hague Convention, *supra* note 1, art. 15.

Third, the entire article 15 mechanism for dispensing with proof of service violates the Rules Enabling Act, 28 U.S.C. 2072, which governs passage and amendment of the Federal Rules of Civil Procedure.  Under the Rules Enabling Act, the Supreme Court is empowered "to prescribe general rules of practice and procedure."  *Id.* § 2072(a).  Rules and amendments transmitted by the Supreme Court to Congress by May 1 take effect December 1 "unless otherwise provided by law."  *Id.* § 2074(a).  Congress thus has seven months to veto new rules and amendments.

Rule 4 requires proof of service.  Fed. R. Civ. P. 4(l)(1) ("Unless service is waived, proof of service must be made to the court.").  The article 15 mechanism for dispensing with proof of

service plainly contravenes Rule 4. And because the article 15 mechanism is optional, exercising the option required further action on the part of the United States. The only valid procedure for adopting such a new rule in contravention of Rule 4 is the one established by the Rules Enabling Act. Neither the Supreme Court nor Congress, however, made the decision to adopt the article 15 procedure for judgment without proof of service. Rather, the decision was made by the U.S. Department of State as part of a set of "designations and declarations" accompanying the deposit of the United States ratification with the Ministry of Foreign Affairs of the Netherlands. *See* Hague Convention, *supra* note 1, 20 U.S.T. at 373. The article 15 procedure for judgment without proof of service therefore violates the Rules Enabling Act and is ineffective in this country.

Fourth, even if the article 15 procedure dispensing with proof of service had been validly adopted pursuant to the Rules Enabling Act (which it was not), it would violate the Due Process Clause of the U.S. Constitution. Because service is a prerequisite to acquiring jurisdiction, due process "requires every method of service to provide 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 707 (1988) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). The procedure for judgment without service in article 15 of the Hague Convention is not reasonably calculated to provide notice. To the contrary, by its very terms it dispenses with service, permitting a forum country to enter judgments where plaintiffs have in fact failed to effect service. Such a procedure is the antithesis of due process under the U.S. Constitution.

The Hague Convention cannot justify the Clerk's Default.

### 2. Service on Individuals in the United States Was Ineffectual

Service within the United States may be made on "an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h)(1)(B).  None of the three persons Plaintiff purports to have served are proper recipients of service upon Golsun under Rule 4(h)(1)(B).  Indeed, Plaintiff itself acknowledged to this Court, well after serving the three individuals, that service on Golsun had <u>not</u> been accomplished and might never be.  (D.E. 25 at 1-3 (quoted above at pp. 4-5).)  Plaintiff has thus already conceded these attempts at service were ineffectual.

### a. James Pravel

Service of process on an attorney who is not authorized to accept service for his client is ineffective.

> A person's attorney is not authorized to receive process simply because of his status as attorney.  Service of process is not effectual on an attorney solely by reason of his capacity as an attorney.  The party must have appointed his attorney as his agent for service of process before personal jurisdiction is obtained over the party by service on his attorney.

*Durbin Paper Stock Co. v. Hossain*, 97 F.R.D. 639, 639 (S.D. Fla. 1982).  *See also Ransom v. Brennan*, 437 F.2d 513, 518 (5th Cir. 1971) ("[S]ervice of process is not effectual on an attorney solely by reason of his capacity as an attorney.").

In the Default Motion, Plaintiff represented to the Clerk that it had served Golsun by serving James Pravel ("Pravel"), who prosecuted the '397 Patent for Chen before the U.S. Patent and Trademark Office (the "Patent Office").  Plaintiff told the Clerk that Pravel was Golsun's "agent" (D.E. 35 at 4 n.1), because Chen at some point assigned his interest in the patent to Golsun.  But as Plaintiff is constrained by the duty of candor to disclose, Pravel vehemently rejected the attempted service, instructing Plaintiff that he had never represented Golsun and was not authorized to accept service of process on behalf of Golsun:

Dear Mr. Gilman,

This responds to the service attempt that you made on me at my home in connection with the lawsuit identified above.

As indicated in my emails to you, to which you did not acknowledge, I do not represent Changchun Gaoxiang Special Pipe Co., Ltd. ("Golsun Pipes") and I have never represented them. I prepared, filed and prosecuted the US Patent Application that issued as US Patent 9,067,397 but I only represented the inventor Bin Chen. Mr. Chen retained my services but I had no engagement relationship with Golsun Pipes.

Therefore, I cannot accept service on behalf of Golsun Pipes and you should notify the Court accordingly. Enclosed is the original Notice of Service that erroneously indicates that I am "counsel-of-record."

Not all patent practitioners are attorneys and contrary to your assumption, the records at the US Patent and Trademark Office do not reflect any specific current or ongoing representation between clients and attorneys.

Do not send any other documents to my home.

(D.E. 35-7.)

Pravel's admonition of Plaintiff's counsel is correct. And disturbingly, it indicates that Pravel had already advised Plaintiff's counsel by e-mail that Pravel was not authorized to accept service on behalf of Golsun, yet Plaintiff's counsel harassed Pravel by carrying out the faux service at Pravel's home address. Equally troubling, Plaintiff's counsel then represented to the Clerk of this Court that Pravel had been served as Golsun's "counsel-of-record" (*id.*; D.E. 23 at 2; *see also* D.E. 35-4 (describing Pravel as "attorney, agent or firm for" Golsun)).

An attorney who prosecutes a patent application is not thereby appointed by operation of law to accept service in any subsequent litigation related to the patent. The notion is foreign to the annals of American patent law, and utterly frivolous. Yet Plaintiff represented to the Clerk on this basis that Golsun had been served.

The ends do not justify the means. Service on Pravel was ineffectual.

### b.  Juan Rincon

In a particularly devious tactic, Plaintiff led the Clerk to believe that Golsun had been served through Juan Rincon ("Rincon"), whose company MCL Marine sells Golsun's products. The affidavit of service on Rincon, however, belies the impression that Plaintiff misleadingly gave the Clerk.  The affidavit shows that Rincon was served with a subpoena for document production, not with a summons for Golsun to appear in a civil action.  (D.E. 35-9.)  The difference, of course, is day and night.  There was a summons for Golsun (D.E. 4-1), but that is not what Plaintiff served on Rincon.

Moreover, even if Plaintiff had served Rincon with a summons for Golsun (which it did not), Rincon was not "an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process."  Fed. R. Civ. P. 4(h)(1)(B).  Rather, by Plaintiff's own evidence, Rincon works for Hong Kong company MCL Marine that usually purchases and resells Golsun pipe, although in one transaction MCL Marine acted as Golsun's sales agent.  (D.E. 35-10.)  Nothing in the relationship between Golsun and MCL Marine suggests that MCL Marine's salesperson is a valid recipient of service upon Golsun.  The notion is preposterous and frivolous.

Plaintiff cites the Wright Miller treatise for the proposition that the language of Rule 4(h)(1)(B) might extend as far as a person "in a position of sufficient responsibility so that it is reasonable to assume that the person will transmit notice of the commencement of the action to organizational superiors," 4A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1103, at 573 (3d ed. 2002).  But Plaintiff cites no judicial authority, much less Eleventh Circuit authority, adopting that loose formulation.  And in any event, Rincon did not even work for Golsun, so he had neither "responsibility" at Golsun nor "organizational

superiors" at Golsun to whom he might have been "assume[d]" to transmit notice.

Service on Rincon was ineffectual.

### c. Chen

Plaintiff also misled the Clerk into believing that Golsun had been served through Chen. The record clearly indicates that Chen was served only with the summons for Chen, not with the summons for Golsun. The affidavit of service upon Chen, which is dated August 29, 2016, states that "Bin Chen" was served with the summons. (D.E. 35-12.) It does not purport to certify service upon "Bin Chen, as general or managing agent for Golsun Pipes." And the record contains no other affidavit of service upon Bin Chen in any capacity.

Plaintiff confirmed that the affidavit pertained only to service upon Chen when Plaintiff filed a Notice of Service on April 10, 2017. (D.E. 23.) A copy of the August 29 affidavit was Exhibit 1 to the Notice of Service and was represented as proof of "service on Chen." (*Id.* at 1.) A copy of the affidavit of service on Pravel was Exhibit 2 to the Notice of Service and was the only proof of service offered with respect to Golsun. Plaintiff explicitly stated that it had unsuccessfully asked Chen's counsel to accept service for Golsun. (*Id.* at 2 ("FlexSteel has also inquired whether counsel for Chen will accept service on behalf of Golsun Pipes as well. To date, they have been unable to do so.").) If the much earlier service on Chen had really been service on Golsun, such further attempts would have been unnecessary. Plaintiff cannot now pretend that its service on Chen was really service on Golsun. Nor could the service of a single summons ever do double duty where two defendants are to be served.

Even if Plaintiff had attempted to serve Golsun through Chen (which it did not), the attempt would fail. Chen is not a managing or general agent of Golsun. Plaintiff represented to the Clerk that Chen is listed on Golsun's website as a "Technical Director and Principal Pipeline

Engineer." (D.E. 35 at 9.) This was patently false. The exhibit Plaintiff attached in support of that claim clearly states that Chen's title is Technical Director, and that he "was WELLSTREAM[] Principal Pipeline Designer." (D.E. 35-13.) In other words, Plaintiff added Chen's title with Wellstream, Plaintiff's own predecessor, to his title with Golsun, in order to create an appearance that Chen has greater responsibilities at Golsun. Plaintiff thus engaged in deception to procure the Clerk's Default.

Plaintiff fails to carry its burden of showing that Chen, as a technical director residing in the United States, where Golsun has no offices, has such managerial responsibility for the affairs of a company located in Jilin Province, China (Am. Compl. ¶ 3) that he is a proper recipient of service of process. By Plaintiff's own exhibit, Chen is an engineer involved in "design and manufacturing work" for a particular Golsun product area called "marine oil with flexible pipe." (D.E. 35-13.) He is not a managing or general agent under Rule 4(h)(1)(B).

Golsun has not been served.

**B. There Is Good Cause Under Rule 55(c) to Set Aside the Clerk's Default**

The Eleventh Circuit has made clear that the question whether to set aside a clerk's default should be approached with "a strong preference for deciding cases on the merits." *Farquharson v. Citibank, N.A.*, 664 Fed. App'x 793, 797 (11th Cir. 2016) (affirming district court's decision to set aside default).

Under Rule 55(c), a district court "may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c). Although good cause "does not have a precise definition or description," *Farquharson*, 664 Fed. App'x at 797, relevant factors include whether the defendant (1) acted culpably or willfully, (2) presents a meritorious defense, (3) would suffer significant financial loss, and (4) acted promptly to correct the default. *Id.*; *Compania Interamericana Export-Import, S.A. v. Compania Dominicana de Aviacion*, 88 F.3d 948, 951 (11th Cir. 1996). Also

relevant is whether the plaintiff would be prejudiced by setting aside the default. *Farquharson*, 664 Fed. App'x at 797.

Even if Golsun had been served (which it has not), the factors relevant to evaluating good cause under Rule 55(c) nonetheless would warrant setting aside the Clerk's Default entered in this case.

### 1. Golsun Did Not Act Culpably or Willfully

As explained above, Rule 4 makes very clear that service of a summons is a prerequisite to the power of a court to compel a defendant to appear. "Formal personal service impresses upon a defendant that judicial process has been invoked to effect a coercive remedy against him," *Varnes*, 674 F.2d at 1368, and until such formal service is effected, the defendant is under no obligation voluntarily to submit itself.

Having never been served, Golsun plainly did not act culpably or willfully in failing to appear in this action. To the contrary, even if Golsun was aware that a lawsuit had been filed, Golsun was perfectly entitled to sit back and do nothing until formally served. A plaintiff may file suit and never serve the defendant. This is an elementary point of procedure. Unless and until service is effected, there is no obligation to appear or respond. That is why the time for responding to a complaint runs from service of the summons, not from filing of the lawsuit. Fed. R. Civ. P. 12 (a)(1)(A)(i) (stating that defendant must serve answer "within 21 days after being served with the summons and complaint").

Nor do Plaintiff's intimations that Golsun had actual notice of the suit carry any significance. Actual notice does "not operate as a substitute for service of process," *Ransom*, 437 F.2d at 519, and therefore "'clearly mere notice is not a sufficient ground upon which a court can sustain the validity of service of process,'" *id.* (quoting *Berner v. Farny*, 11 F.R.D. 506, 509

(D.N.J. 1951)).

Following the Federal Rules of Civil Procedure is not culpable or willful conduct. This factor alone requires that the Clerk's Default be set aside.

    **2. Golsun Has Numerous Meritorious Defenses**

Golsun has numerous meritorious defenses to this action, including but not limited to the following.

i. The Court lacks subject matter jurisdiction over Plaintiff's claim to transfer ownership of the Chinese Patent.

ii. The Court lacks personal jurisdiction over Golsun, which has no offices in this forum, has conducted no business in this forum, and lacks the minimum contacts necessary to the exercise of jurisdiction over Golsun. Notably, Plaintiff appears to rely on alleged forum activities of Chen during the period of time that Chen was employed by Plaintiff's predecessor. Golsun obviously is not responsible for Chen's activities while engaged with Plaintiff's predecessor.

iii. As discussed above, service of process on Golsun is invalid, defective and insufficient.

iv. The Amended Complaint lacks a short and plain statement of the claims against Golsun, for reasons including but not limited to a failure to distinguish which counts are alleged against Golsun and which counts are alleged against Chen.

v. Plaintiff's state-law claims depend on whether Chen is the true inventor of the '397 Patent and the Chinese Patent, and are therefore preempted by federal patent law.

vi. To the extent Plaintiff's claims against Golsun derive from Plaintiff's contractual claim to ownership of inventions made by Chen after his departure from Plaintiff's predecessor,

such contractual terms are invalid, void and unenforceable.

vii.  Because Plaintiff's claims against Golsun depend entirely on the merit of Plaintiff's claims against Chen, all defenses raised by Chen are equally applicable to the claims against Golsun.  Accordingly, Golsun incorporates by reference all defenses raised in Chen's answer (D.E. 26).  Those defenses include but are not limited to specific factual denials of Plaintiff's allegations that Chen is not the true inventor of the '397 Patent and the Chinese Patent.

ix.  Prior to filing the original complaint in this case, Plaintiff filed a state-court action in Texas raising many of the same claims based on the same set of facts, and should not be permitted to maintain this duplicative action.  (A copy of the Texas complaint is attached hereto as Exhibit A.)

x.  Venue for this action is improper.

The Clerk's Default should be set aside.[2]

### 3.  Golsun Would Suffer Significant Financial Loss

The '397 Patent and the Chinese Patent are valuable assets of Golsun.  Plaintiff itself claims that its actual damages in this case exceed $5,000,000, and that the amount should be trebled to an excess of $15,000,000.  (Ex. B.)  Thus, by Plaintiff's own account, Golsun would suffer significant financial loss.

The Clerk's Default should be set aside to so that losses of such magnitude are not imposed via procedural diktat.

---

[2] To be clear, Golsun hereby preserves, and does not waive, its objections to service of process, personal jurisdiction, and venue.  Accordingly, the appearance of counsel for Golsun in connection with the present motion constitutes a limited, special appearance for purposes of challenging the Clerk's entry of default, and should not be construed as consent to service, jurisdiction or venue.

### 4. Golsun Acted Promptly in Response to the Default

The Clerk's Default was entered August 10, 2017, just three weeks ago. Considering the distant foreign identity of Golsun, the multiplicity of unorthodox and spurious grounds for service asserted by Plaintiff, and the numerosity of claims, defenses and other issues to be explored, Golsun has acted promptly in response to the default. *See Kilpatrick v. Town of Davie*, No. 08-60775-CIV, 2008 WL 3851588, at *2 (S.D. Fla. Aug. 15, 2008) (finding that "Defendant acted in a reasonable time" where "[l]ess than three weeks elapsed" between entry of clerk's default and defendant's motion to set aside default).

### 5. Plaintiff Will Not Be Prejudiced

Plaintiff cannot show any cognizable prejudice from setting aside the Default, because Plaintiff procured the Default by improper means. Plaintiff misled the Clerk into believing that the mere passage of six months was sufficient under the Hague Convention to permit entry of a clerk's default, when in reality the question whether to enter default under article 15 is for a district judge to decide upon motion after considering the facts and circumstances of the particular case (a procedure that is illegitimate in itself because it violates the Rules Enabling Act and constitutional due process). Plaintiff also engaged in several misrepresentations in connection with its claims to have served Golsun through Pravel, Rincon and Chen, as detailed above. Moreover, any timing issues Plaintiff now faces are a result of Plaintiff's own decision to proceed against Chen long before Plaintiff could have reasonably expected to serve Golsun.

There is no cognizable prejudice in declining to satisfy Plaintiff's eagerness to obtain a default judgment against Golsun through misrepresentation and without service of process.

## IV. <u>CONCLUSION</u>

The Court should set aside the Clerk's Default.

Dated: August 31, 2017

Respectfully submitted,

/s/ John C. Carey
John C. Carey (FBN: 78379)
*jcarey@careyrodriguez.com*
**CAREY RODRIGUEZ
MILIAN GONYA, LLP**
1395 Brickell Avenue, Suite 700
Miami, Florida 33131
Tel.: (305) 372-7474
Fax: (305) 372-7475

*Attorneys for Defendant Changchun Gaoxiang Special Pipe Co., Ltd.*

## CERTIFICATE OF ATTORNEY CONFERENCE

Pursuant to N.D. Fla. L.R. 7.1, the undersigned certifies that on August 17, 2017 he conferred telephonically with Timothy K. Gilman, Esq. and Robert W. Hyberg, Esq., counsel for Plaintiff, who stated Plaintiff would oppose this motion.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing document was electronically filed with the Clerk of the Court via the CM/ECF system, which generates a Notice of Electronic Filing to all attorneys of record listed below this 31st day of August, 2017.

Timothy K. Gilman
Robert W. Hyberg
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Tel.: (212) 446-4673
Fax: (212) 446-4800

James P. Judkins
AUSLEY & MCMULLEN LLP
123 S Calhoun Street
Tallahassee, FL 32301
Tel.: (850)-425-5333
Fax: (850)-222-7560

By: _/s John C. Carey_
    John C. Carey