IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

FLEXSTEEL PIPELINE
TECHNOLOGIES, INC.,

     Plaintiff,

v.                                                    Case No. 5:16-cv-239-MCR-GRJ

BIN CHEN and CHANGCHUN
GAOXIANG SPECIAL PIPE CO., LTD.,
a/k/a GOLSUN PIPES,

     Defendants.

_____/

## REPORT AND RECOMMENDATION

Pending before the Court is ECF No. 56, Defendant Bin Chen's

Motion to Exclude the Testimony of Expert Witness Julie Ingram.

Defendant Chen ("Chen") argues that the proposed testimony should be

excluded as unreliable and that the danger of unfair prejudice outweighs

any probative value. FlexSteel Pipeline Technologies, Inc. ("FlexSteel")

filed a response, ECF No. 65, and the motion is otherwise ripe for review.[1]

For the reasons discussed below, Chen's motion to exclude is due to be

denied.

---

[1] Chen also filed a reply to FlexSteel's response. (ECF No. 71.) Chen, however, failed to request leave to file this reply in accordance with the Local Rules. *See* N.D. Fla. Loc. R. 7.1(I) ("A party ordinarily may not file a reply memorandum in support of a motion [except a motion for summary judgment]. . . . And in extraordinary circumstances, the Court may grant leave to file a reply  memorandum in support of another motion.").

## I.  BACKGROUND

FlexSteel filed an Amended Complaint in November 2016 alleging that Chen was exposed to FlexSteel's pipe technology when he worked at FlexSteel's predecessor. According to FlexSteel, Chen and co-Defendant Golsun misappropriated FlexSteel technology by filing patents on FlexSteel's inventions. FlexSteel's claims for relief include correction of inventorship of the '397 Patent, conversion, breach of contract, tortious interference with contractual obligations, misappropriation of trade secrets, and violation of Florida's civil theft statute. ECF No. 16.

FlexSteel retained a flexible pipe expert, Julie Ingram ("Ms. Ingram"), to review FlexSteel's technology and research and design documents and compare it to Defendants' '397 Patent and Chinese Patent ("Patents") to opine as to whether the Patents embody FlexSteel's technology. ECF No. 65 at 1. She then submitted a 66-page report of her findings, which included multiple claim charts comparing the Patents and FlexSteel technology as well as comparing the Patents and Golsun's products. ECF No. 65-1.

Chen argues that Ms. Ingram's testimony should be excluded as unreliable, unhelpful, and prejudicial. ECF No. 56.

## II. DISCUSSION

The admissibility of expert testimony is governed by Rule 702 of the

Federal Rules of Evidence, which provides in relevant part:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>     (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>     (b) the testimony is based on sufficient facts or data;
>     (c) the testimony is the product of reliable principles and methods; and
>     (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

In applying Rule 702, the Supreme Court has stated that trial courts

are to act as "gatekeepers" to prevent speculative, unreliable, and

irrelevant opinions from reaching the jury. *Daubert v. Merrell Dow Pharm.,

Inc.*, 509 U.S. 579, 589 n.7, 597 (1993). "This function 'inherently require[s]

the trial court to conduct an exacting analysis' of the *foundations* of expert

opinions to ensure they meet the standards for admissibility under Rule

702." *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004)

(alteration in original) (quoting *McCorvey v. Baxter Healthcare Corp.*, 298

F.3d 1253, 1257 (11th Cir. 2002)).

The Eleventh Circuit has developed a three-part inquiry for trial court's to use in performing their gatekeeping role under Rule 702.

> Trial courts must consider whether: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Frazier*, 387 F.3d at 1260 (citing *City of Tuscaloosa v. Harcos Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998)). Additionally, "[t]he burden of establishing qualification, reliability, and helpfulness rests on the proponent of the expert opinion." *Id.*; *see also Parkervision, Inc. v. Qualcomm Inc.*, No. 3:11-cv-719-OrlTEM, 2013 WL 12152672, at *1–*2 (M.D. Fla. Oct. 11, 2013) (noting that the burden must be met "by a preponderance of the evidence." (citing *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1292 (11th Cir. 2005)).

The trial court has "broad discretion in deciding *Daubert* issues." *StoneEagle Servs., Inc. v. Pay-Plus Sols., Inc.*, No. 8:13-cv-2240-T-33MAP, 2015 WL 3824170, at *2 (M.D. Fla. June 19, 2015) (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999). Notably, "[a] review of the case law after *Daubert* shows that the rejection of expert testimony

- 4 -

is the exception rather than the rule." *Id.* (quoting Advisory Committee Notes to the 2000 Amendment to Rule 702).

Based on the three-part approach prescribed by the Eleventh Circuit, the Court concludes that FlexSteel has shown by a preponderance of the evidence that Ms. Ingram is qualified as an expert, her methodology is sufficiently reliable, and her testimony will assist the trier of fact. *See Frazier*, 387 F.3d at 1260. Each of these factors is discussed in turn below.

**A. Ms. Ingram is qualified as an expert witness.**

First, the Court must determine whether Ms. Ingram is qualified as an expert witness. There are multiple ways to qualify as an expert. "While scientific training or education may provide possible means to qualify, experience in a field may offer another path to expert status. In fact, the plain language of Rule 702 makes this clear: expert status may be based on 'knowledge, skill, experience, training, or education.'" *Frazier*, 387 F.3d at 1260–61 (quoting Fed. R. Evid. 702).

In this case, it is undisputed that Ms. Ingram is qualified. According to Chen, "Ingram seems to have a sufficient background to serve as an expert in this litigation." (ECF No. 56 at 21.)[2]  And as proffered by

---

[2] Chen describes Ms. Ingram's sufficient background as the following:

She has provided testimony at a deposition and trial in one case in the

FlexSteel, "[s]he has multiple degrees in mechanical engineering, nearly twenty years of industry experience in flexible pipe technology, and now serves as the Director of the Subsea Engineering program at Texas A&M University." ECF No. 65 at 6. More specifically, she has a masters of science degree in mechanical engineering, has worked designing and evaluating flexible pipe technology, and "has extensive experience translating complex technical information regarding flexible pipe designs to a variety of audiences." *Id.* at 8–9, 15; 65-1 at 6–7, 69–72.

The Court, therefore, has no trouble concluding that FlexSteel has met its burden by a preponderance of the evidence that Ms. Ingram qualifies as an expert witness. *See Marlite, Inc. v. Eckenrod*, No. 09-22607-CIV-TORRES, 2010 WL 11505461, at *3 (S.D. Fla. June 18, 2010) ("Here, [a] prong of expert analysis is not in dispute, therefore we find that this requirement is met." (citing *Frazier*, 387 F.3d at 1260)).

---

Southern District of Texas, FlexSteel pays her $450 per hour for her testimony, she holds both a Mechanical Engineering degree and a Master of Science in Mechanical Engineering, and designed, studied, tested, analyzed, sold, inspected, selected, detected, neglected, and erected all sorts of flexible pipe for at least 11 years at a flexible offshore pipe company called Technip.

(ECF No. 56 at 21.)

**B. Ms. Ingram's methodology is sufficiently reliable.**

The Court must next determine whether the methodology used by Ms. Ingram is reliable. According to the Supreme Court, "the Rules of Evidence—especially Rule 702—do assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597. District courts, however, "have substantial discretion in deciding how to test an expert's reliability and whether the expert's relevant testimony is reliable." *United States v. Majors*, 196 F.3d 1206, 1215 (11th Cir. 1999) (quoting *Forklifts of St. Louis, Inc. v Komatsu Forklift, USA, Inc.*, 178 F.3d 1030, 1034 (8th Cir. 1999)).

"When evaluating the reliability of scientific expert opinion, the trial judge must assess 'whether the reasoning or methodology underlying the testimony is scientifically valid and . . . whether that reasoning or methodology properly can be applied to the facts in issue." *Frazier*, 387 F.3d at 1261–62 (quoting *Daubert*, 509 U.S. at 592–93). Factors to consider *may* include "(1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in

the scientific community." *Quiet Tech*. *DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003) (citing *McCorvey*, 298 F.3d at 1256).

Notably, "[t]hese factors are illustrative, not exhaustive; not all of them will apply in every case, and in some cases other factors will be equally important in evaluating the reliability of proffered expert opinion." *Frazier*, 387 F.3d at 1262 (citing *Kumho Tire*, 526 U.S. at 150–52). But again, "the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire*, 526 U.S. at 152. While the method for determining reliability may vary, "what remains constant is the requirement that the trial judge evaluate the reliability of testimony before allowing its admission at trial." *Frazier*, 387 F.3d at 1262. And regardless of the factors considered, the "focus [should be solely] on the expert's principles and methodology, and not on the conclusions that they generate." *McDowell v. Brown*, 392 F.3d 1283, 1298 (11th Cir. 2004).

In Ms. Ingram's report, she states that the substance of her expert testimony is centered on the following:

> There are two patents involving . . . flexible pipe designs that Chen claims to be inventor to: U.S. Patent No. 9,067,397 (the "'397 Patent") and Chinese Patent CN 100432513C (the "Chinese Patent"). . . . I have examined both of these patents for whether: (1) the '397 Patent and the Chinese Patent

- 8 -

embody confidential technology first developed by FlexSteel; and (2) whether Golsun's flexible pipe products embody the '397 Patent and Chinese Patent.

ECF No. 65-1 at 36. In short, Ms. Ingram's testimony focuses on whether "the [Patents] and Golsun products incorporate FlexSteel technology." ECF No. 65-2 at 27:21–23.

Ms. Ingram's methodology to achieve this end is straightforward. She examined FlexSteel's research and development documents as well as the relevant Patents. She then compared the technology described in FlexSteel's files to Chen's Patents' claims and Golsun's pipes. In her report she described the various layers and materials in FlexSteel's designs, including how these layers work together, based on their research and development files. She then analyzed the relevant Patents, looking to see if the same elements were present in Chen's Patents as were described in FlexSteel's files and if the elements were arranged in the same way. She then performed this same comparison analysis between the Patents and Golsun's pipes. She further created detailed charts explaining her findings on a claim-by-claim basis in great detail. ECF No. 65 at 6–10, 19–20; ECF No. 65-1; ECF No. 65-2 at 13:2–16, 27:21–23, 64:1–3, 114:23–115:3, 136:24–137:3.

This methodology of comparing technology to designs on a claim-by-claim and element-by-element basis as well as creating claim charts is commonly and reliably used in cases involving patents and misappropriation. *See, e.g.*, *Wm. Wrigley Jr. Co. v. Cadbury Adams USA LLC*, 683 F.3d 1356, 1361 (Fed. Cir. 2012) (noting that proving infringement involves comparing elements and limitations against another party's designs for the purpose of determining if "all of the limitations of the claim" are present and "arranged or combined in the same way as in the claim"); *Canon Comp. Sys., Inc. v Nu-Kote Int'l, Inc.*, 134 F.3d 1085, 1089 (Fed Cir. 1998) (noting that the expert prepared a claim chart that "compared the accused [product] to the [patent] claims"); *Texas Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1563 (Fed. Cir 1996) (noting that proving infringement requires comparing the patent "to the allegedly infringing device" on a "limitation-by-limitation basis"); *Quintel Tech. Ltd. v. Huawei Techs. USA, Inc.*, No. 4:15-CV-307, 2018 WL 626355, at *5 (E.D. Tex. Jan. 30, 2018) (finding as reliable in a misappropriation claim the method of making side-by-side comparisons between patents and technology). Ms. Ingram, therefore, followed an established practice and methodology utilized by experts in patent and misappropriation cases in forming her own expert opinion.

Chen does not dispute that such methodology is appropriate in a case such as this one. Instead, Chen argues that Ms. Ingram's application (or misapplication) of this methodology in this case was unreliable. Chen describes Ms. Ingram's actual methodology as follows: "compare layers, do not analyze how they function together, do not look to publicly available materials, do not look to your own experience, do not look to legal requirements for such pipe, do not look to industry standards, only point out similarities and program improper legal conclusions and unreliable factual conclusions." ECF No. 56 at 28.

Chen's description of Ms. Ingram's methodology is a mis-characterization of her approach and is belied by the methodology Ingram actually utilized, as explained in her expert report and in her deposition testimony. For example, relying upon isolated comments "cherry-picked" from Ingram's deposition testimony, Chen says that Ms. Ingram's report should be excluded under Rule 702 because she did not consider the technology as a whole or how the layers function together.

Contrary to Chen's representation Ms. Ingram's deposition testimony shows that her conclusions were based upon her review and consideration of the layers of the pipes separately and as a whole.  For example, when directly asked at her deposition whether she performed her analysis "[b]y

looking at all of the layers in . . . concert, in conjunction and how they interacted together or by looking at the layers in isolation," she unequivocally responded "Both." ECF No. 65-2 at 63:1–64:3, 115:19–116:6. In light of this testimony, it is difficult to discern how Chen concluded that Ingram failed to analyze how the layers work together. Chen's attack on her methodology on this basis is, therefore, unfounded.

Additionally, Chen argues that Ms. Ingram used insufficient data, which resulted in a flawed and unreliable methodology. More specifically, Chen says Ms. Ingram failed to include—and FlexSteel "cherry-picked" or failed to provide—all relevant data in forming her opinion (e.g., third-party pipe designs and patents, scholarly articles regarding publicly available technology, industry standards, non-Wellstream documents, and her past work experience).[3]

This argument misses the point of Ms. Ingram's opinion. Because Ms. Ingram's objective was to determine whether the Patents embody FlexSteel technology, the only relevant data consisted of Wellstream research and development documents describing FlexSteel's technology

---

[3] In making this argument, Chen cites to case law regarding instances where experts used inadequate data or cherry-picked data when performing analysis. *See, e.g.*, *EEOC v. Freeman*, 778 F.3d 463 (4th Cir. 2015); *LeClercq v. Lockformer Co.*, No. 00 C 7164, 2005 WL 1162979 (N.D. Ill. Apr. 28, 2005). Unlike those cases, however, Ms. Ingram considered all relevant data in performing her analysis.

and the Patents. Third-party pipe designs and other scholarly articles simply were not relevant to her analysis. Thus, although Ms. Ingram did not consider all data relevant to flexible pipe technology, she did consider all data relevant to her task at hand: comparing FlexSteel's technology and Chen's Patents. ECF No. 65-1; ECF No. 65-2 at 14:4–14, 114:23–115:3. And despite Chen's argument that Ingram relied upon inadequate data, Chen fails to point to any material or any *relevant* data regarding the scope of the Patents, the contents of FlexSteel's technology, or the nature of Golsun's products that Ms. Ingram did not consider or overlooked.

Chen further argues that Ms. Ingram's report should be excluded because she was not as careful as she would be in her regular professional work outside of her paid litigation consulting. He says that she ignored (or was "[u]nder some spell of careful forgetfulness") her previous work experience and industry standards in forming her conclusions. Based on this alleged failure, Chen concludes that Ms. Ingram "was not as careful as a professional in her industry when she failed to take notice of industry standards." ECF No. 56 at 21–25.

This argument also has no merit. With regard to her prior work experience, Ms. Ingram specifically testified that she performed all of her analysis "[i]n the context of [her] expertise."  ECF No. 65-2 at 14:4–14,

64:1–3, 114:23–115:3, 136:24–137:3. With regard to industry standards, she specifically mentions them in her report. ECF No. 65-1 at 14–15, 26, 29, Exs. 3–4.[4]  Simply put, no reason exists to exclude Ingram's testimony because she allegedly failed to consider her past work experience or industry standards.

Despite Chen's contentions to the contrary, Ms. Ingram properly and carefully employed the appropriate methodology and considered all relevant and necessary material and data to form her opinion regarding whether the Patents and Golsun products embody FlexSteel technology. Accordingly, the Court concludes that FlexSteel has met its burden of showing by a preponderance of the evidence that Ms. Ingram's methodology is reliable.

**C. Ms. Ingram's testimony will assist the trier of fact.**

Lastly, the Court must determine whether Ms. Ingram's testimony will assist the trier of fact in understanding the evidence or determining a fact in issue. "By this requirement, expert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person."

---

[4]  Notably, the industry standards provide only minimum requirements for the industry, and each manufacturer has freedom to develop technology to achieve those standards. The standards, therefore, are not relevant to whether Chen misappropriated FlexSteel technology.

*Frazier*, 387 F.3d at 1262 (citing *United States v. Rouco*, 765 F.2d 983, 995 (11th Cir. 1985)). Further, the expert testimony must offer "more than what lawyers for the parties can argue in closing arguments." *Id.* at 1262–63.

"Because of the powerful and potentially misleading effect of expert evidence, sometimes expert opinions that otherwise meet the admissibility requirements may still be excluded by applying Rule 403." *Id.* at 1263 (citation omitted). A court should exclude evidence under Rule 403 "if the probative value of otherwise admissible evidence is substantially outweighed by its potential to confuse or mislead the jury, or if the expert testimony is cumulative or needlessly time consuming." *Id.* (citation omitted).

In cases involving complex and technical issues, as here, experts are common and play a vital role. *See, e.g.*, *Centricut, LLC v. Esab Grp., Inc.*, 390 F.3d 1361, 1369–70 (Fed. Cir. 2004) ("[C]ourts have held that relevant expert testimony regarding matters beyond the comprehension of laypersons is sometimes essential. Expert testimony may be similarly important in patent cases involving complex technology . . . . We have also noted that 'typically' expert testimony will be necessary in cases involving complex technology."); *Illumina, Inc. v. Affymetrix, Inc.*, No. 09-cv-277-bbc,

2009 WL 3062786, at *3 (W.D. Wis. Sept. 21, 2009) ("In patent lawsuits, . . . experts and lawyers end up playing the starring roles . . . .").

The Court has no difficulty concluding that Ms. Ingram's testimony concerning technical matters is beyond the understanding of the average lay persons (and for that matter probably beyond the understanding of the Court), would help the jury understand the evidence in general and would assist the jury in determining a fact in issue, namely whether Chen's Patents embody FlexSteel's technology.

If this case proceeds to trial, the jury will be tasked with more than simply looking at pictures of different pipes and comparing them. They will need to examine years' worth of documents and Patents that contain industry-specific language and diagrams regarding flexible pipe technology. They will also need to understand each element of the complex Patents; decipher where, if at all, those elements appear in FlexSteel's research and development files; and determine whether Chen had access to those documents.

Ms. Ingram's report provides a thorough description of flexible pipe technology as well as a detailed comparison between Chen's Patents and FlexSteel's research and development files. Ms. Ingram's testimony also translates the relevant documents, Patents, and diagrams into terms

understandable to the average lay person. Her expert report includes detailed claim charts on an element-by-element basis that will assist the jury in comparing the Patents, Golsun's products, and FlexSteel's technology. Given the jury's task in this case, it is thus difficult to discern how such testimony could be considered anything other than helpful.

Chen, however, argues that Ms. Ingram's testimony should not be admissible because the level of technicality in her report is low and thus the findings are not beyond the ability of a jury. He says that her report contains no technical analysis of the actual metallurgy or chemical composition of the components, nor does it contain analysis of the layers working together. Chen surmises that "[c]ommon sense, a buzzsaw, and an industry standard like API 17J would allow any layman to determine the makeup of the layers in each pipe to the degree of Ingram's present analysis." ECF No. 56 at 11.

Yet even a cursory review of Ms. Ingram's report shows otherwise. Her report contains a detailed description of the layers and materials of FlexSteel's designs and how those layers work together to perform different functions, as extrapolated from FlexSteel's research and development documents. Her report also contains an equally detailed analysis of Chen's Patents. Ms. Ingram's technical charts provide a one-to-

one comparison between each element in FlexSteel's technology and each claim in the Patents. Because her report is appropriately and sufficiently detailed—even more so than the Patents themselves—Chen's unsupported attack on her testimony as lacking in technicality fails. (ECF No. 65-1.)

Chen additionally argues that Ms. Ingram's testimony would confuse or mislead a jury and that it should be excluded as prejudicial. Specifically, Chen says that the language Ms. Ingram uses such as: "first developed by FlexSteel," "confidential," "embodiments," and "misappropriation," carries legal significance that can manipulate a jury and is inherently confusing and misleading.[5] ECF No. 56 at 30–32.

Ms. Ingram's report, however, contains no improper legal or factual conclusions. Ms. Ingram's conclusion that Chen's Patents "embody" FlexSteel technology, which Chen was exposed to while employed with FlexSteel's predecessor, is not an improper legal conclusion. Drawing

---

[5] Chen bases a significant portion of his argument on the fact that Ms. Ingram's report contains the language "first developed by FlexSteel." Notably, Chen also concedes that Ms. Ingram makes clear that what she means by "first developed by FlexSteel" is "developed by FlexSteel before Golsun." (ECF No. 56 at 16–17.) Because it is clear to the Court, and because it was clear to Chen, that Ms. Ingram was not attempting to say that the technology was first developed by FlexSteel before anyone else (rather than just before Golsun), the Court finds it unnecessary to address the myriad of arguments regarding Chen's contention that Ms. Ingram failed to support the conclusion that the technology was "first developed by FlexSteel."

conclusions about embodiment is much different from opining about what constitutes a trade secret, a legal conclusion that Ms. Ingram specifically testified was outside the scope of her investigation. ECF No. 65-2 at 27:12–15. Her expert testimony regarding embodiment goes to the core factual issue in this case and is, therefore, proper and relevant for a jury to consider.

And to the extent that Chen believes Ingram's use of language such as "embodiment" or reference to "first developed by FlexSteel" might mislead a jury, that is not a basis for excluding expert testimony under Rule 702 or *Daubert* but rather is something Chen can challenge and explore on cross-examination.

Despite Chen's confidence in the jurors of the Northern District of Florida to make factual conclusions by simply looking at pictures of the pipes and other publicly available materials, the Court concludes otherwise. Accordingly, the Court concludes that Ms. Ingram's expert testimony would be of assistance to the jury and is necessary for the jury to understand the relevant technology, patents, and products at issue.[6]

---

[6] Ms. Ingram's report also provides background information on flexible pipe technology that will be helpful, in addition to her technical comparisons between FlexSteel's research and development and Chen's Patents. Further, her report reflects that she may offer testimony on, *inter alia*, the history and nature of flexible pipe, its uses, materials and variants in designs and layers in flexible pipes, and how different materials and layers work

### III. CONCLUSION

Ultimately, although a district court must thoroughly analyze a proffered expert's methodology and opinion, "[a] district court's gatekeeper role under *Daubert* 'is not intended to supplant the adversary system or the role of the jury.'" *Maiz v. Virani*, 253 F.3d 641, 666 (11th Cir. 2001) (quoting *Allison v. McGhan*, 184 F.3d 1300, 1311 (11th Cir. 1999)). Instead, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596 (citing *Rock v. Arkansas*, 483 U.S. 44, 61 (1987)). Here, the Court finds Ms. Ingram's testimony is admissible as relevant and reliable and will provide evidence to assist the trier of fact in deciding disputed issues.  If Chen wishes to challenge Ms. Ingram's opinion he may make his points through cross-examination, "the traditional and appropriate means" of doing so.

Accordingly, for these reasons, it is respectfully **RECOMMENDED** that**:**

---

together in flexible pipes. All of this information would assist the trier of fact.

Defendant Bin Chen's Motion to Exclude the Testimony of Expert Witness Julie Ingram, ECF No. 56, should be **DENIED.**

**IN CHAMBERS** at Gainesville, Florida this 17th day of May 2018.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

- 21 -